336 So.2d 359 (1976)
THE FLORIDA BAR.
In re Ronald Wilson Brooks.
No. 49761.
Supreme Court of Florida.
August 3, 1976.
Brian T. Hayes, Monticello, and David G. McGunegle, Tallahassee, for The Florida Bar, complainant.
William L. Camper, Tallahassee, for respondent.
PER CURIAM.
This matter is before the Court on Petition for Approval of Conditional Guilty Plea and Entry of Final Order of Discipline filed by The Florida Bar.
The Stipulated Facts are as follows:
"STIPULATED FACTS RE: RONALD WILSON BROOKS
On September 21, 1973, Robert Rahme and his seven-year-old son David, Don Spicer, Jr., David Pfaff, and Karen Tenney left Tallahassee, Florida, in Rahme's van for a bow and arrow hunting and camping trip at the Robert Brent Wildlife Management Preserve. The group proceeded from Tallahassee to Brooks' home on Lake Talquin near the Wallwood Boy Scout Camp. From Brooks' home, the *360 group went to the management area in two vehicles, Rahme's van and Brooks' jeep. At dusk, Rahme, Brooks and Pfaff departed for a hog pen located on Duncan Hosford's property with the announced intention of releasing the hogs which they considered to be illegally baited from the Brent Wildlife Management Area. Tenney, Spicer and David remained at the campsite. Spicer was not allowed to accompany Rahme, Brooks and Pfaff to protect him from getting into trouble. Later Rahme returned in the jeep and spoke briefly to Tenney, and then departed in the jeep. Spicer and David were asleep at the time, although Spicer vaguely remembers Rahme returning.
During the course of the evening, Duncan Hosford and Edmond "Buck" Mercer came by the campsite looking for persons whom they suspected were stealing Hosford's hogs.
Later that evening, Hosford and Mercer approached the hog pen in Hosford's truck. The headlights of Hosford's truck were seen by Rahme who was at the hog pen. Upon seeing the approaching vehicle, Rahme jumped into the jeep and started driving away from the pen toward Hosford and Mercer who were out of the truck some distance from the hog pen. Brooks and Pfaff started running through the woods and subsequently heard shots being fired, but never returned to the pen. They did not see Rahme being shot nor knew that he had been shot. However, Rahme, in the speeding jeep, drove past Hosford and Mercer. Hosford fatally shot Rahme in the fleeing jeep. At no time did Hosford or Mercer see anyone at the hog pen other than Rahme. However, after Rahme had been shot, Hosford did find a dead hog with piglets in the back of the jeep driven by Rahme. The hog had been shot with two arrows while in the pen.
Pfaff found his way out of the woods to State Road 20 and hitched a ride in a Wells Fargo truck to his residence in Tallahassee where he lived with his girlfriend, Kathy Jones, and her sister, Amy Jordan.
Brooks made his way to State Road 20 where he was picked up by John Pearce and his girlfriend, Trudey Letton, in Pearce's camper. They returned to Brooks' house shortly before daylight on Saturday morning. During the trip, Brooks related to Pearce that he, Pfaff, and Rahme had gone to a hog pen located on posted property for the purpose of releasing hogs, which they felt were being illegally baited off the Brent Wildlife Management Area. Brooks said that Rahme had killed one of the hogs in the pen with a bow and arrow, and that shortly afterward someone approached the scene in a vehicle at which point Rahme jumped into the jeep and fled and Brooks and Pfaff ran off into the woods. Brooks went on to say that killing the hog was Rahme's idea and that if he had been caught, Brooks did not want to become involved. Accordingly, he asked Pearce and Letton to tell anyone who asked that they had picked him up at home.
Brooks, Pearce, and Letton had breakfast at Brooks' place where he showered and put on fresh clothes. The group then returned to the campsite whre [sic] they met law officers who took Brooks into Bristol. Both Brooks and Pearce were questioned in Bristol, then Brooks was released.
Tenney, Spicer, and the boy David followed the law officers to Bristol, identified Rahme's body at the funeral home and then went to Brooks' home (on Lake Talquin in Gadsden County, some 10 to 12 miles from the scene of the killing) where they told Mrs. Brooks that Rahme was dead. Shortly after the arrival of Tenney, Spicer and David at the Brooks' home, Brooks arrived with Pearce who called Pfaff. Pfaff and Pearce discussed the idea that Pfaff notch his boots so that the law enforcement officers could not match his boots with the footprints at the scene of the shooting. However, at the suggestion of either Pearce or Brooks, the *361 idea was discarded. Pfaff then came to Brooks' home where Pearce advised those present that Brooks, as a lawyer, could be disciplined for trespassing or for attempting to steal a hog, and that he must be kept from being involved.
The story developed was to be as follows: Brooks did not intend to camp out that Friday night, merely going along with the group to find out where the campsite would be so that he could then join Pearce the next morning and show him the way to the campsite where they would join Rahme and Pfaff for bow hunting; that after the campsite was selected, Rahme, Brooks and Pfaff got into the jeep to take Brooks to his home near Lake Talquin; that while driving through the forest at or about dusk, the group decided to drop Pfaff off to look for tracks of game in the woods; that Rahme and Brooks then continued on to Brooks' home arriving there about 9:30 p.m. Friday night; further, that Pfaff got lost in the woods in the darkness and could not find his way to camp, but did eventually manage to get out to a paved road and hitchhike a ride to his residence in Tallahassee; finally, that Pearce met Brooks early Saturday morning, the two proceeded toward the campsite, and shortly thereafter learned that Rahme had been killed the night before.
On September 27, 1973, Brooks, pursuant to a subpoena requested by the State Attorney, appeared and testified under oath before a coroner's inquest in Liberty County investigating the death of Robert Rahme basically to the foregoing story.
The parties hereto stipulate that Respondent's testimony although not legally perjurious, (See F.S. 837.02 (1973) and C.G.L. 7477 (1927); Rivers v. State [121 Fla. 887]; 164 So. 544 (Fla. 1935) was nonetheless false regarding his absence from the general area of the hog pen at the time Rahme was shot. As such, Respondent's testimony constituted false swearing and a violation of Integration Rule 11.02(3)(a) and Disciplinary Rules 1-102(A)(3), 1-102(A)(4) and 1-102(A)(5) of the Code of Professional Responsibility."
The Petition for Approval of Conditional Guilty Plea is granted and Respondent Ronald Wilson Brooks, is hereby disciplined by public reprimand to be published in the Southern Reporter based upon the facts set forth above. The publication of this Opinion shall serve as the public reprimand to Respondent.
Costs in the amount of Two Hundred Ninety-Six Dollars and Fourteen Cents ($296.14) are hereby taxed against Respondent.
It is so ordered.
OVERTON, C.J., and ROBERTS, ADKINS, BOYD and ENGLAND, JJ., concur.