760 So.2d 933 (2000)
THE FLORIDA BAR, Complainant,
v.
Daniel Peter FEINBERG, Respondent.
No. SC93165.
Supreme Court of Florida.
June 1, 2000.
*935 John F. Harkness, Jr., Executive Director, and John A. Boggs, Staff Counsel, Tallahassee, Florida, and Stephen C. Whalen, Assistant Staff Counsel, Tampa, Florida, for Complainant.
Arthur I. Jacobs of Jacobs & Associates, P.A., Fernandina Beach, Florida, for Respondent.
PER CURIAM.
The Florida Bar petitions this Court to review a referee's report recommending that Daniel Peter Feinberg be publicly reprimanded for violating certain Rules Regulating The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.

FACTS
The Bar filed a complaint against Feinberg, alleging that he had spoken with an opposing counsel's client without opposing counsel's awareness, and was later untruthful concerning the events.[1] Upon conclusion of the disciplinary proceedings, the referee issued a report making the following findings of fact.
Feinberg was an Assistant State Attorney working for the felony division of the Charlotte County State Attorney's Office during the relevant time period. In 1996, Feinberg was approached by the private counsel of a criminal defendant charged with drug offenses. The attorney suggested that since the State had a strong case against his client, the only way his client could avoid prison would be to cooperate with the State Attorney's Office and provide assistance to law enforcement. Feinberg, the private attorney, and the defendant subsequently met to discuss a possible arrangement, but no agreement was reached.
The defendant was thereafter rearrested for violating the Department of Corrections' early release program,[2] whereupon his counsel again approached Feinberg in an attempt to negotiate a "deal" for the defendant. Feinberg referred the attorney to two law enforcement officers, who were not interested in effectuating such a "deal." The defendant proceeded to plead guilty to the drug charges.
The defendant later was able to convince the law enforcement authorities that he could provide assistance. The day before his sentencing hearing, the defendant met with law enforcement officers and Feinberg, but his private attorney was not present. At the meeting, Feinberg asked the defendant if he wanted his attorney present, and the defendant said "no." Although it is not entirely clear what the defendant said at this meeting, Feinberg testified:
I'm not 100 percent sure of what he said with regarding [sic] he is fired or he's gonna fire. I know my mind set going out of the meeting is that [the private attorney] is not going to represent [this defendant] anymore, and he is not representing [the defendant] in that meeting. That I know is my mind set.
Accordingly, Feinberg asked the defendant if he wanted court-appointed counsel and the defendant declined.
At the meeting, the defendant, Feinberg and the law enforcement officers reached an agreement through which the defendant, in exchange for providing assistance to law enforcement, would be released *936 from jail and receive house arrest. The defendant then requested that his personal counsel not be advised of the agreement. The defendant asserted that his counsel had connections with the "drug community," meaning persons involved in selling illegal drugs, and if the defendant's agreement was disclosed, word would get back to the "drug community" that he was acting as an informant.[3] Later that same day, the defendant's attorney met with the defendant and the defendant advised him that an agreement had been made with Feinberg and law enforcement officers.
At the sentencing hearing the next day, Feinberg found it "remarkable" to see the attorney appear on the defendant's behalf. Feinberg approached the attorney and told him that he had not prepared the necessary paperwork for sentencing, and that he was going to request a continuance. Feinberg did not mention the deal reached with the defendant, and the continuance was granted.
After the sentencing hearing, Feinberg went to his supervisor to discuss what had occurred (i.e., the defendant telling Feinberg at the meeting with law enforcement officers that he was not represented, and the defendant's attorney subsequently appearing on his behalf at sentencing). Feinberg, with the advice of his supervisor, decided that the defendant's cooperation with the police was a matter separate from the pending criminal charges. Accordingly, Feinberg and his supervisor decided to proceed with the informant arrangement and obtain the defendant's release from jail.
Shortly thereafter, the defendant's attorney confronted Feinberg and inquired if he had met with the defendant. Feinberg responded that he had not. Several days later, the defendant met with Feinberg and entered into a stipulation that the defendant would assist law enforcement.
According to the defendant's attorney, he asked Feinberg on two later occasions if he was meeting with the defendant, and Feinberg responded that he was not. At a later court hearing, the attorney requested a private in-chambers meeting with the judge and Feinberg. The attorney advised the judge as to what had occurred in the defendant's case. At Feinberg's disciplinary hearing, the defendant's counsel testified that Feinberg told the judge he had "done nothing to interfere in the attorney-client relationship between [counsel] and his client." The judge instructed Feinberg and opposing counsel to work out their differences, and the two attorneys agreed to a quasi-mediation session. At the disciplinary hearing, the mediator testified that when the attorney confronted Feinberg about speaking with one of his clients, Feinberg stated, "Well, you know, [counsel], once in awhile as attorneys we have to lie to one another." The mediator testified that within five minutes of making this comment, Feinberg stated that he misspoke. The mediator testified that Feinberg appeared remorseful and stated that he felt he was not getting guidance from his office as to how to handle the situation. The record of this meeting did not indicate whether Feinberg ever disclosed to opposing counsel the contact with the defendant.
The attorney subsequently moved to withdraw as the defendant's counsel and eventually filed a grievance against Feinberg with The Florida Bar. The Bar in turn filed the complaint underlying the present case.
As to guilt, the referee recommended that Feinberg be found guilty of violating rules 4-4.1(a)(requiring truthfulness in statements to others) and 4-4.2 (prohibiting communication with a person represented by counsel). The referee expressed his belief that "Bar Counsel in its Memorandum of Law for Sanctions appears only to request the Court to consider sanctions *937 for [these violations]" and accordingly recommended that Feinberg only be sanctioned for violating rules 4-4.1(a) and 4-4.2. The referee set forth that even if the Bar did seek sanctions on Feinberg's alleged violations of rules 4-8.4(a) (prohibiting knowing violations of the rules), 4-8.4(c) (prohibiting dishonesty, fraud, deceit, and misrepresentation) and 4-8.4(d) (prohibiting attorneys from engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice), he would recommend that Feinberg be found not guilty of violating these rules.
As to discipline, the referee first noted that the defendant had manipulated both his personal attorney and Feinberg to obtain his desired result. The referee stated that he
has no doubt that [the defendant] did indeed advise [Feinberg] not to tell his lawyer ... about a possible substantial assistance deal for fear that his lawyer would somehow communicate this intentionally or unintentionally to others who may put the word out on the street that the Defendant was working for law enforcement. The Referee [finds] that indeed [the defendant] was successful in manipulating law enforcement and [Feinberg] into believing that somehow [defendant's attorney] was involved in illegal narcotics and that [Feinberg] and/or [his] loved ones would be in danger if [opposing counsel] was advised of this deal.
The referee found no aggravating factors in the instant case; however, he did find the following mitigating factors: (a) lack of guidance and supervision (Feinberg went to his supervisor and the supervisor approved Feinberg's conduct); (b) good character or reputation (specifically noting that since the incident in this case, Feinberg has continued to handle cases against the attorney involved in this case, and the attorney has never asked that Feinberg be disqualified); (c) remorse; and (d) absence of selfish motive. Although not listed as a mitigating factor, the referee expressly noted that the defendant was not harmed in any way by Feinberg's misconduct; in fact, he benefitted from Feinberg's actions. The referee also found that Feinberg has continued his duties as an Assistant State Attorney without incident. Finally, the referee expressed his belief that "the chances of [Feinberg] committing another violation of this type are less than zero."
The referee stated that imposing a three-year suspension as recommended by the Bar would destroy Feinberg's career and that "the shame that has been cast on [Feinberg's] character and attendant local publicity about this matter is enough to deter any attorney from committing a like violation." Concluding that Feinberg's "desire to protect [the defendant], along with [his] lack of guidance, combined with ignorance of the law, is what fueled [his] behavior," the referee recommended the following discipline: (1) a public reprimand; (2) a judgment of costs against Feinberg, to be paid in equal monthly installments over a three-year period; (3) a letter of apology from Feinberg to the attorney in this case acknowledging the referee's findings and sanctions imposed; and (4) a letter from Feinberg to the State Attorney of the Twentieth Judicial Circuit acknowledging the referee's findings and sanctions imposed, as well as acknowledging Feinberg's untruthfulness to a fellow member of the Bar, with copies of this letter forwarded to (a) all Assistant State Attorneys in the Twentieth Judicial Circuit; (b) all Assistant Public Defenders in the Twentieth Judicial Circuit; (c) all attorneys in Charlotte County as listed in the Florida Bar Journal; (d) all judges in the Twentieth Judicial Circuit; and (e) all witnesses who testified on Feinberg's behalf.
The Florida Bar has petitioned this Court to review the referee's report.

ANALYSIS
In its petition, the Bar does not contest the referee's findings of fact. Rather, the *938 Bar challenges both the findings of guilt and the discipline recommended by the referee.

A. Guilt
The Bar first argues that it did indeed intend to seek sanctions against Feinberg for violating rules 4-8.4(a), 4-8.4(c) and 4-8.4(d), and that competent substantial evidence is lacking in the record to support the referee's legal conclusion that Feinberg did not violate these rules. "The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Sweeney, 730 So.2d 1269, 1271 (Fla.1998) (quoting Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996)).
We conclude that the referee's finding that Feinberg is not guilty of violating rules 4-8.4(a), 4-8.4(c) and 4-8.4(d) is simply not supported by the record. First, in his report the referee found that Feinberg violated rules 4-4.1(a) and 4-4.2. Because rule 4-8.4(a) prohibits attorneys from violating the rules of Professional Conduct, of which rules 4-4.1(a) and 4-4.2 are a part, Feinberg is necessarily guilty of violating rule 4-8.4(a).
Second, rule 4-8.4(c) prohibits attorneys from engaging in deceitful conduct. In his report, the referee found that Feinberg "deceived [opposing counsel] in reference to contact with his client on several other occasions." This specific finding of deceit compels the conclusion that Feinberg violated rule 4-8.4(c).
Finally, Rule 4-8.4(d) prohibits attorneys from engaging in conduct that is prejudicial to the administration of justice. This Court has stated that "a lawyer is an officer of the courts and as such is an essential component of the administration of justice." State ex rel. Florida Bar v. Calhoon, 102 So.2d 604, 608 (Fla.1958). This Court has further noted that "[w]hile conduct that actually affects a given proceeding may be prejudicial to the administration of justice, conduct that prejudices our system of justice as a whole also is encompassed by rule 4-8.4(d)." Florida Bar v. Machin, 635 So.2d 938, 939-40 (Fla. 1994). In his report, the referee found that Feinberg, an attorney for the state, deliberately made untruthful statements to a defense attorney in the context of a criminal case. Even though the defendant encouraged and actually benefitted from Feinberg's deception, and even though Feinberg may have believed he had a good motive for being untruthful (i.e., the defendant's alleged fear of his counsel), the fact is clear that Feinberg continued to meet with a criminal defendant even after he was placed on notice that the defendant was represented by counsel. A prosecutor engaging in such conduct impugns the judicial system as a whole because it implies that state prosecutors are willing to undermine the adversarial process. Such is a very dangerous notion that strikes to the heart of our justice system. As such, Feinberg engaged in conduct that was prejudicial to the administration of justice, thereby violating rule 4-8.4(d).
In summary, we adopt the referee's conclusion that Feinberg violated rules 4-4.1(a) and 4-4.2; however, we reject the referee's finding that Feinberg is not guilty of violating rules 4-8.4(a), 4-8.4(c) and 4-8.4(d).

B. Discipline
The Bar next argues that the recommended discipline is too lenient and that a three-year suspension is in order under the facts of this case.
In reviewing a referee's recommendation of discipline, the Court does not "pay the same deference to this recommendation as we do to the guilt recommendation because this Court has the ultimate responsibility to determine the appropriate sanction." Sweeney, 730 So.2d at 1272. However, this Court "will not second-guess a referee's recommended discipline as long *939 as that discipline has a reasonable basis in existing case law." Id. Attorney discipline serves the following three purposes:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Florida Bar v. Cibula, 725 So.2d 360, 363 (Fla.1998)(quoting Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994)).
In Suarez v. State, 481 So.2d 1201, 1206 (Fla.1985), this Court held that it was a clear ethical violation for "a prosecuting attorney to interview a defendant represented by counsel without notice to defense counsel when the defendant requests or acquiesces to the interview." In the instant case, Feinberg was untruthful in discussions with an attorney regarding his meetings with that attorney's client. Further, Feinberg continued to meet privately with a criminal defendant after he discovered that the defendant was still represented by counsel. Truth is critical in the operation of our judicial system and we find such affirmative misrepresentations by any attorney, but especially one who represents the State of Florida, to be disturbing. Feinberg's actions, although generated by good intentions, developed into serious violations which cast a shadow over the integrity of our adversarial system.
Nevertheless, we conclude that the referee's recommended discipline of a public reprimand with the additional conditions listed in the report is appropriate. Our conclusion is primarily based on the unique circumstances of this case. A somewhat clever defendant indicated to Feinberg that he had discharged (or would be discharging) his attorney. The defendant then constructed an arrangement, primarily with law enforcement officers but also with Feinberg's participation, without his counsel being present. The defendant requested that Feinberg not reveal these conversations to his counsel based upon an alleged fear for the defendant's safety (due to the attorney's alleged contacts with the "drug community"). After Feinberg discovered that the defendant was in fact still represented, he sought direction and advice from his supervisor, and his conduct was essentially approved. This placed Feinberg in the extremely volatile situation of having to decide whether to inform opposing counsel of the deal (thereby possibly placing the defendant in danger), or denying inappropriate contact with the defendant each time he was confronted by opposing counsel. Feinberg opted not to reveal his contacts with the defendant.
Although we understand the predicament in which Feinberg found himself, he nevertheless exercised poor judgment by affirmatively misleading and being untruthful with opposing counsel, and continuing to meet with the defendant after realizing that, contrary to the defendant's statements, he was represented by counsel. As is so often the case, had Feinberg simply relied upon the truth when confronted with the facts, the resulting trail of deception would have never occurred. It is this perpetuation of the untruthful approach that aggravates that which may have initially been subject to understanding.

CONCLUSION
In simply imposing a public reprimand in this case, it must be noted that we in no way support Feinberg's conduct in the instant case. Had the unusual circumstances of the instant case not been present, substantially more severe discipline would have been imposed. We conclude by emphasizing that attorneys must be extremely cautious in determining whether to speak with an individual who appears to *940 be represented by counsel. Moreover, as evidenced in the instant case, attorneys must be ever vigilant to avoid inducement into compromising conduct that is detrimental to our judicial system. Attorneys must also be forthright and truthful when confronted with a possible problem.
Accordingly, we hereby reprimand attorney Daniel Peter Feinberg for professional misconduct. The reprimand shall be accomplished by the publication of this opinion. In addition to the reprimand, Feinberg is ordered to comply with the conditions of the referee's report that he write (1) a letter of apology to the attorney in the instant case acknowledging the referee's findings and sanctions imposed, and (2) a letter to the State Attorney of the Twentieth Judicial Circuit acknowledging the referee's findings and sanctions imposed, as well as acknowledging Feinberg's untruthfulness towards a fellow member of the Bar. Copies of Feinberg's letter to the State Attorney shall be forwarded to all Assistant State Attorneys in the Twentieth Judicial Circuit, all Assistant Public Defenders in the Twentieth Judicial Circuit, all attorneys in Charlotte County as listed in the Florida Bar Journal, all judges in the Twentieth Judicial Circuit, and all witnesses who testified on Feinberg's behalf. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Daniel Peter Feinberg in the amount of $4,912.87, to be paid in equal monthly installments over a three-year period, for which sum let execution issue.
It is so ordered.
SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, C.J., concurs in part and dissents in part with an opinion, in which WELLS, J., concurs.
HARDING, C.J., concurring in part and dissenting in part.
I concur with the majority as to the findings of guilt. However, I dissent from the acceptance of the recommendation for a public reprimand. I believe that the conduct in this case warrants a thirty-day suspension. See Florida Bar v. Burkich-Burrell, 659 So.2d 1082 (Fla.1995) (attorney who failed to disclose materials to opposing counsel and failed to ensure that information provided to opposing counsel was correct given thirty-day suspension); Florida Bar v. Anderson, 538 So.2d 852 (Fla.1989) (lead attorney who failed to correct brief that misrepresented facts of case to court given thirty-day suspension).
WELLS, J., concurs.
NOTES
[1] In its complaint, the Bar alleged that Feinberg violated the following Rules Regulating The Florida Bar: 4-4.1(a) (requiring truthfulness in statements to others); 4-4.2 (prohibiting communication with a person represented by counsel); 4-8.4(a) (prohibiting knowing violations of the rules); 4-8.4(c) (prohibiting dishonesty, fraud, deceit, and misrepresentation); and 4-8.4(d) (prohibiting attorneys from engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice).
[2] The referee does not explain why the defendant was under Department of Corrections supervision. However, the referee does state in his report that the defendant had a criminal history and that the trial court could have sentenced him as a habitual offender for the current drug charges.
[3] The referee found no merit to the defendant's allegations regarding his attorney's connections with persons involved in selling illegal drugs.