794 So.2d 1278 (2001)
THE FLORIDA BAR, Complainant,
v.
Karen Schmid COX, Respondent.
No. SC96217.
Supreme Court of Florida.
May 17, 2001.
*1279 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Division Director, Tallahassee, FL; and Debra Joyce Davis, Assistant Staff Counsel, Tampa, FL, for Complainant.
David A. Maney of Maney, Damsker & Jones, P.A., Tampa, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that attorney Karen Schmid Cox be publicly reprimanded for violating several Rules Regulating the Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we disapprove the referee's recommended discipline and impose a one-year suspension.
The Bar charged Cox with violating four Rules Regulating the Florida Bar while acting in her capacity as an Assistant United States Attorney in a criminal prosecution. Following hearings on both guilt and discipline, the appointed referee made the following factual findings.[1]

FACTS
Cox was assigned to prosecute a case against James R. Sterba on an indictment charging a violation of 18 U.S.C. § 2422(b) (solicitation of a minor to engage in prostitution or any sexual act). The United States Customs Service ("Customs") investigated the case and employed a confidential informant, Adria Jackson, to pose as a 13 year old girl on the Internet to assist Customs in its investigation of child pornography and pedophiles. Customs gave Jackson the fictitious name of "Gracie Greggs." Prior to trial, the magistrate in the case ordered Cox to provide Jackson's name to the defense. Cox knew Jackson's true name prior to trial. However, Cox listed Jackson on the government's witness list as Gracie Greggs, and informed defense counsel, the court, and the venire that Jackson's name was Gracie Greggs. On direct examination of Jackson, Cox deliberately introduced the witness to the court and the jury by asking, "Are you Gracie Greggs?" instead of the customary question, "What is your name?" Jackson was a crucial witness for the government's case against Sterba, and Cox learned after *1280 trial that Jackson had a previous criminal history.
Jackson's true identity was revealed mid-trial and the United States District Court granted Sterba's motion for a mistrial. See United States v. Sterba, 22 F.Supp.2d 1333 (M.D.Fla.1998). Sterba then moved to dismiss the indictment against him on double jeopardy grounds and the federal district court agreed that Sterba had been "goaded" into requesting a mistrial:
Specifically, I have found that the intent of the prosecutor in this case was to succeed in palming off Adria Jackson and her biographical baggage as Gracie Greggs, an operative of law enforcement....
As a result of the prosecutorial plan in this case, the United States required the defense to present its case, forced the defendant to make his constitutional election whether to testify, secured the right to cross-examine the defendant under oath, and otherwise leveraged the defendant into the position of revealing his strategy, his theories, his evidence, and his cross-examination. All the while, the prosecutor [Cox] harbored a secret. Viewed one way, the secret was that she had withheld so-called Giglio and other information that, if ever known to the defense, might discredit her featured witness. Viewed differently, the secret was that the prosecutor at any time could prompt a defense motion for a mistrial (and thereby accrue another chance at conviction) by revealing to the defense the truth about "Gracie Greggs." In either event, the trial was not conducted on equal footing because the prosecutor had a lie at her disposal.
. . . .
By a course of intentional misconduct, discovered serendipitously by the defense during trial, the prosecution goaded the defense into moving for a mistrial. The defendant's fifth amendment immunity from double jeopardy precludes another trial and, therefore, requires the dismissal of the indictment.
Id. at 1341-43. Although the referee in this case disagreed with the district court's determination that Cox planned to deprive Sterba of his constitutional rights, the referee did conclude that Cox "was a seasoned prosecutor and fully aware of the requirements of candid disclosure to the court and defense counsel and the reasons in justice for that candor."
Based on his factual findings, the referee recommended that Cox be found guilty of violating the following Rules Regulating the Florida Bar: 4-3.3(a)(1) (lawyer shall not knowingly make false statement of material fact or law to a tribunal); 4-3.3(a)(4) (lawyer shall not knowingly permit any witness to offer testimony that the lawyer knows to be false); 4-3.4(a) (lawyer shall not unlawfully obstruct another party's access to evidence or otherwise conceal other material that the lawyer knows or should know is relevant to pending proceeding, nor assist another person to do such an act); and 4-3.4(b) (lawyer shall not fabricate evidence, or counsel or assist a witness to testify falsely).
As to discipline, the referee initially concluded that the presumptively appropriate sanction was suspension under Florida Standard for Imposing Lawyer Sanctions 6.12, which provides:
Suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action.
The referee found that Standard 6.11, which provides for the presumption of disbarment, was not the proper starting point *1281 for the analysis of this case because "the evidence indicates that [Cox] did not intend to deceive the United States District Court before which she was practicing on any matter of substantial justice." The referee found that Cox believed Jackson had a clean criminal record and that the use of an assumed name for the witness would not be any impediment to justice in the case.
The referee found only one aggravating circumstance-that Cox had substantial experience in the practice of law. See Fla. Stds. Imposing Law. Sancs. 9.22(i). In mitigation, the referee found that Cox had no prior disciplinary record, lacked a selfish or dishonest motive, and made full and free disclosure during the proceedings. See Fla. Stds. Imposing Law. Sancs. 9.32(a), (b), (e). The referee also found that Cox would be subject to additional penalties as a result of her misconduct, see Fla. Stds. Imposing Law. Sancs. 9.32(g), because "[s]he has been investigated by the Office of Professional Regulation for this conduct and anticipates receiving a penalty of two weeks without pay." The referee found that Cox's reputation was "excellent" and "unsullied except for this instance." See Fla. Stds. Imposing Law. Sancs. 9.32(g). The referee relied on Cox's "impressive list of state and federal judges, law enforcement officers, and associates who willingly testified that she is intelligent, candid, hardworking, always well-prepared, courteous, professional, admired, respected, and dedicated to our system of justice," and the testimony of several of these witnesses that the instant conduct "was a mistake and an aberration." The referee also found that Cox was sincerely remorseful, see Fla. Stds. Imposing Law. Sancs. 9.32(l), and that Cox "comprehends or fully grasps the serious import of her conduct and truly regrets her actions." The referee observed: "I believe her when she says that her remorse stems not only from the embarrassment it has caused her personally but also from the embarrassment it has caused to her profession as a lawyer and prosecutor."
The referee concluded that the many mitigating circumstances, when weighed qualitatively against the one aggravating circumstance, "seem to call for a reduction of the discipline" from the presumption of suspension, and recommended that Cox receive a public reprimand and be placed on probation. Although the referee did not specifically rely on any one case in making this recommendation, the referee explained that such a sanction "seem[ed] to be proportional with other similar disciplinary cases," and noted that several cases involving false testimony lacked the substantial mitigation found in the instant case. The referee commented that "[p]rosecutors as a class are accustomed to demanding punishment of others ... [and] to assuming an attitude of righteous indignation on behalf of society," and therefore concluded that Cox "is one of those lawyers whose sense of justice is sufficient that she will truly suffer as a result of a public reprimand."

THE BAR'S PETITION FOR REVIEW
The Bar seeks review of the referee's recommended sanction, arguing that a public reprimand is inappropriate under the facts of this case and that a three-year suspension is in order. Although a referee's findings of fact are given deference, our review of a referee's recommended discipline is more extensive, because this Court has the ultimate responsibility to determine the appropriateness of a recommended sanction. See Florida Bar v. Niles, 644 So.2d 504 (Fla.1994). However, we typically will not disapprove a referee's recommended discipline so long as the referee's recommendation has a reasonable *1282 basis in existing caselaw. See Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla. 1997). In this case, we conclude that in light of the duty violated and the injury caused by the misconduct, the referee's recommended discipline of a public reprimand does not have a reasonable basis in existing caselaw, and we therefore disapprove the recommended discipline.
Cox argues that the referee's recommended sanction is supported by many cases involving misrepresentations in which public reprimands were imposed.[2] Having reviewed the cases cited by Cox, we find that these cases are distinguishable because the misrepresentations at issue in these cases either did not have a dramatic effect on the proceedings,[3] were less severe or less culpable than the instant case,[4] arose in uncontested disciplinary cases,[5] or were mitigated by unusual circumstances.[6]
Cox also relies on our recent case of Florida Bar v. Feinberg, 760 So.2d 933 (Fla.2000), in which we publicly reprimanded an Assistant State Attorney for making false statements to defense counsel and for having direct contact with a defendant who was represented. We find that case distinguishable *1283 because Feinberg involved misrepresentations induced when "a somewhat clever defendant indicated to Feinberg that he had discharged (or would be discharging) his attorney," and the defendant "requested that Feinberg not reveal these conversations to his counsel based upon an alleged fear for the defendant's safety (due to the attorney's alleged contacts with the `drug community')." Id. at 939. Although Feinberg involved misrepresentations to opposing counsel, that case notably did not involve misrepresentations to the court or the knowing presentation of false testimony to a jury. Feinberg and the other cases cited by Cox do not support a public reprimand.
The Florida Standards for Imposing Lawyer Sanctions provide a starting point for determining, in the absence of mitigating or aggravating circumstances, an appropriate discipline based on the duty violated and the potential or actual injury caused by the violation. As discussed above, the referee in this case initially determined that suspension was the presumed discipline under Standard 6.12; however, the Bar argues that Standards 6.11 and 7.1, which presume disbarment, apply in this case. Standard 6.11 provides:
Disbarment is appropriate when a lawyer: (a) with the intent to deceive the court, knowingly makes a false statement or submits a false document; or (b) improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
The Bar concedes that subsection (a) was not presumptively appropriate because the referee found that Cox "did not intend to deceive the United States District Court on any matter of substantial justice." The Bar instead argues that the referee did not give sufficient weight to subsection (b) of this standard and that Cox's improper withholding of material information posed a potentially serious injury to the defendant in the case. Furthermore, the Bar maintains that, the actual result, dismissal with prejudice, was a significant adverse effect on the legal proceeding.
The Bar additionally contends that Standard 7.1 constitutes a proper starting point, insofar as it provides that
[d]isbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
The Bar argues that Cox either acted for her own benefit to ensure the availability of a reluctant witness, or for the benefit of Jackson to ensure Jackson's anonymity and conceal her involvement in the case from her former husband. The Bar contends that the dismissal with prejudice of the criminal case constitutes a serious injury to the legal system. We agree that Standards 6.11 and 7.1 apply in this case and that, accordingly, disbarment and not suspension was the presumptive sanction.
The referee found that, although Cox knew Jackson's real name, she introduced her to the court, jury, and defense counsel as Gracie Greggs; assisted the witness in concealing her true name from the court, jury and defense counsel; and assisted Jackson to testify falsely. These findings indicate that Cox "improperly with[held] material information" as described in Standard 6.11. Further, the indictment against Sterba was dismissed with prejudice and no appeal was taken. We can think of no greater "significant ... adverse effect on the legal proceeding" than a dismissal with prejudice of a criminal indictment due to a prosecutor's misconduct. Equally important, Cox's misconduct *1284 involved "potentially serious injury to a party," namely the criminal defendant, Sterba, whose rights to a fair trial, confrontation, and due process would have been denied had Cox's misconduct not been revealed. As the United States District Court observed in dismissing the indictment, Cox
either manufactured or accepted a plan to employ a fictitious name for Jackson and deploy that name in the service of the prosecution both before and during trial to further the prosecutorial goal of a conviction. The expectation was to proceed with the plan without the knowledge of the defense and without the knowledge or consent of the court. By that means, the AUSA [Cox] could secure for the prosecution the presumed benefit of a conviction of Sterba, while avoiding any presumably unnecessary and bothersome little entanglements with whatever lingering facts might impinge the credibility of her featured witness.
... [T]his plan was hatched with the notion that it would succeed, undetected and unimpaired. In this instance, success means jail for Sterba and a readily repeatable template for renewal in future occasions. The conception and implementation of this plan was intentional and calculated to deprive the defense of its right of confrontation. It almost succeeded.
Sterba, 22 F.Supp.2d at 1340.
We also deem application of Standard 7.1 appropriate under the facts as found by the referee. The referee found that Jackson was reluctant to return to Florida for trial because of a custody dispute with her former husband, and that Customs had assured Jackson that she would not have to testify at trial. The referee found that Cox "listed the name Gracie Greggs for the confidential informant because of concerns for the witness," and "acted (albeit without reflection) in what she thought was the best interest of her witness." Knowingly presenting false evidence is a violation of an attorney's professional duty,[7] and Cox's intent in doing so was "to obtain a benefit for ... another," namely the witness, Jackson. As discussed, such conduct caused serious injury to the legal system and potentially serious injury to the defendant, Sterba. Thus, under the Standards, we view disbarment as the presumptive penalty in this case.
Likewise, we also find disbarment to be the presumptive sanction under this Court's caselaw. Of all the cases cited by the parties, Florida Bar v. Agar, 394 So.2d 405 (Fla.1980), is the most instructive on the conduct at issue here. In Agar, the attorney knowingly elicited and presented false testimony as to the identity of a witness during a court proceeding. Although the witness in Agar was the wife in an uncontested divorce proceeding and the substance of her testimony was to prove an apparently uncontested and minor issue in those proceedings, this Court disapproved the referee's recommended suspension of four months and disbarred Agar, stating that
[n]o breach of professional ethics, or of the law, is more harmful to the administration of justice or more hurtful to the public appraisal of the legal profession than the knowledgeable use by an attorney of false testimony in the judicial process. When it is done it deserves the harshest penalty.
Agar, 394 So.2d at 406 (quoting Dodd v. Florida Bar, 118 So.2d 17, 19 (Fla.1960)). *1285 Because there is no discussion in Agar of any aggravating or mitigating circumstances, we conclude that Agar stands for the proposition that absent any mitigating or aggravating factors, disbarment is the presumptive sanction for an attorney knowingly presenting false testimony in a judicial proceeding.
Although disbarment is the presumptive penalty, we are mindful of the substantial mitigation found by the referee. However, in support of its argument for a three-year suspension, the Bar recommends that we consider Cox's role as a prosecutor in aggravation, arguing that the list of aggravating factors in Standard 9.22 is not all-inclusive. Although we decline to formally characterize Cox's role as a prosecutor as an aggravating factor, we find that Cox's failure to abide by a prosecutor's duty to ensure the fairness of a criminal proceeding is essential to evaluating the gravity of the duty violated in this case.
The tenor of the caselaw discussing the role of prosecutors makes clear that prosecutors are held to the highest standard because of their unique powers and responsibilities. The United States Supreme Court observed over sixty years ago that a prosecutor has responsibilities beyond that of an advocate, and has a higher duty to assure that justice is served:
The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... He may prosecute with earnestness and vigorindeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Thus, a prosecutor has a duty not only "to fairly present the evidence and permit the jury to come to a fair and impartial verdict," Pendarvis v. State, 752 So.2d 75, 77 (Fla. 2d DCA 2000), but also "properly functions in a quasi-judicial capacity with reference to the accused ... to, see that the accused is accorded a fair and impartial trial." Gonzalez v. State, 97 So.2d 127, 128 (Fla. 2d DCA 1957). By the nature of their position, prosecutors direct the power of the government against an accused person. See Ruiz v. State, 743 So.2d 1, 8-9 (Fla. 1999) (reversing conviction and vacating death sentence in part due to prosecutors' attempt "to tilt the playing field ... by invoking the immense power, prestige, and resources of the State"). Therefore, prosecutors must "be ever mindful of their awesome power and concomitant responsibility... [to] reflect a scrupulous adherence to the highest standards of professional conduct." Martin v. State, 411 So.2d 987, 990 (Fla. 4th DCA 1982); see also DeFreitas v. State, 701 So.2d 593, 600 (Fla. 4th DCA 1997) (prosecutor must seek justice "with the circumspection and dignity the occasion calls for"). A criminal prosecution "is not a game where the prosecution can declare, `It's for me to know and for you to find out,'" Craig v. State, 685 So.2d 1224, 1229 (Fla.1996), and a prosecutor is duty-bound to remember that "obtaining a conviction at the expense of a fair trial is not justice." Briggs v. State, 455 So.2d 519, 521 (Fla. 1st DCA 1984).
A prosecutor's heightened duties are likewise reflected in the Rules Regulating *1286 the Florida Bar. Rule 4-3.8 is entitled "Special responsibilities of a prosecutor." Although the Bar did not charge a violation of this rule, the commentary to the rule provides that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate." See R. Regulating Fla. Bar 4-3.8, cmt. Additionally, Standard 5.2 specifically provides a special set of standards for attorney conduct where the attorney is in an "official or government position," Fla. Stds. Imposing Law. Sancs. 5.2, which clearly encompasses prosecutors on both state and federal levels. We considered these high standards in the recent Feinberg case, discussed above, by observing that "[t]ruth is critical in the operation of our judicial system and we find such affirmative misrepresentations by any attorney, but especially one who represents the State of Florida, to be disturbing." Feinberg, 760 So.2d at 939. When a prosecutor fails in these duties and violates an individual's constitutional rights, a prosecutor "not only may be admonished by the trial court, but should expect to be subject to disciplinary proceedings by The Florida Bar." Boatwright v. State, 452 So.2d 666, 668 (Fla. 4th DCA 1984) (Glickstein, J., concurring specially).
The purpose of lawyer discipline is threefold. First, lawyer discipline must protect the public from unethical conduct but at the same time not deny the public the services of a qualified attorney. See Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla.1970). In this case, the referee found, based on the testimony of many distinguished jurists, attorneys, and others that Cox is a hardworking prosecutor who is dedicated to justice and serving the public, and that the conduct in the instant case is an aberration in an otherwise unblemished career. However, Cox failed to heed her duty to represent the public fairly and justly in her role as a prosecutor, and damaged the public by undermining the confidence in the very core of the judicial processthe search for truth. The public clearly deserves protection from a prosecutor who determines on her own when and how to follow the rules. The United States District Court described this breach thus:
In short, [Cox] arrogated to herself the legal and moral authority to decide what truth became public and, thereby, what fate awaited Sterba. [Cox] substituted herself for the judge, jury, and defense, in effect, making away with the fact-finding machinery.
Sterba, 22 F.Supp.2d at 1340. The public expects and deserves fairness and candor from attorneys, especially from a prosecutor who has the power and responsibility derived from representing the government. If we are to preserve the credibility of our self-regulated profession, we must address breaches of that trust in a manner that is commensurate with the severity of the breach.
Second, the discipline must be fair to the attorney, with the object of correcting "the wayward tendency in the accused lawyer while offering to [the lawyer] a fair and reasonable opportunity for rehabilitation." State ex rel. Florida Bar v. Ruskin, 126 So.2d 142, 144 (Fla.1961). Cox's previously unsullied reputation and this apparently isolated lack of judgment support the conclusion that Cox must be given the opportunity to rehabilitate herself.
Finally, lawyer discipline must operate as an effective deterrent to other lawyers who might be prone or tempted to become involved in like violations. See Florida Bar v. Lord, 433 So.2d 983, 986 (Fla.1983). The only effective deterrent to the conduct at issue in this case is a suspension with the requirement that rehabilitation be proven prior to reinstatement. Were we *1287 to impose a suspension with automatic reinstatement, we would fail in our duty to deter others, because "[a] mere suspension for a fixed period of time, with the assurance of automatic reinstatement at the end of the prescribed period, does not impose upon the lawyer the responsibility of taking affirmative action during the period of suspension in order to gain readmittance at the end of the period." Ruskin, 126 So.2d at 144. We warn that we will not hesitate to deal harshly with such misconduct in the future, and trust that our decision here will have the desired effect of deterring this type of disregard for the rules of our profession that directly impact the administration of justice.

CONCLUSION
Karen Schmid Cox is hereby suspended from the practice of law for a period of one year. The suspension will be effective thirty days from the filing of this opinion so that Cox can withdraw from representation accordingly. If Cox notifies this Court in writing that she is no longer practicing or that she does not require thirty days, this Court will enter an order making the suspension effective immediately. Cox shall not undertake any new cases from the date this opinion is filed until she is reinstated. If, following this one-year suspension, Cox is able to demonstrate rehabilitation and is reinstated pursuant to rule 3-7.10 of the Rules Regulating the Florida Bar, Cox will be on probation for a period of one year and be required to complete fifteen hours of continuing legal education in ethics.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and PARIENTE, JJ., concur.
LEWIS, J., dissents with an opinion.
QUINCE, J., recused.
LEWIS, J., dissenting.
While I agree with the majority that the discipline it imposes today is within a permissible range, I must respectfully dissent. Had the local referee recommended the discipline selected today by this Court I could concur. This Court has generally recognized that the recommendation of a referee as to discipline is persuasive, but we do not afford the same deference to discipline recommendations as is afforded considerations of guilt. However, historically this Court has been firmly committed to the concept that, as a general principle, we do not and should not second-guess a referee's recommendation of discipline if the discipline has a reasonable basis in existing law. In my view, the majority today disregards very important factors involved in our system of lawyer discipline of having referees in local communities make determinations based upon the evidence presented. In the past, we have very clearly articulated:
As to discipline, we note that the referee in a Bar proceeding again occupies a favored vantage point for assessing key considerationssuch as a respondent's degree of culpability and his or her cooperation, forthrightness, remorse, and rehabilitation (or potential for rehabilitation). Accordingly, we will not second-guess a referee's recommended discipline as long that discipline has a reasonable basis in existing caselaw.
Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997).
I am concerned that this Court has recently fallen into a pattern of rejecting recommended discipline and merely substituting this Court's view for that of a referee. The standard, as I understand it to be applicable, is not whether we would have recommended the same discipline but, on *1288 the contrary, whether that which has been recommended has a reasonable basis in existing law. In my view, based upon the evidence presented to this local referee, I cannot conclude that there is no reasonable basis in existing law. While one may find the implementation of more severe discipline in circumstances containing elements similar to those presented in the instant case, one also finds reasonable authority upon which the referee, in our system of discipline, was permitted to rely.
This record demonstrates that the referee conducted two days of hearings directed to the issue of the recommendation as to guilt and an additional day concerning the appropriate discipline. The referee here had the advantage of personal participation in evaluating all of the key considerations involved in this dispute. No fewer than nineteen witnesses were presented by Ms. Cox during the portion of the hearing directed to discipline. The witnesses were most impressive, including nine who were either state or federal court judges. It was the Bar's position below that the appropriate discipline would be suspension for a period ranging from ninety-one days to two years. However, the Bar now asserts in this Court that a three-year suspension should be required.
The record underlying this disciplinary dispute demonstrates that a criminal defendant had allegedly engaged in an Internet transmission with an informant of the United States Customs Service (Customs) which resulted in an indictment charging violations of federal law. Customs had come into contact with the informant, Adria Jackson, in connection with an investigation of child pornography on the Internet. Although having no evidence to suggest that Jackson was involved in criminal activity, following an interview with her, Customs requested that she act as an informant and provide assistance in connection with the investigation of child pornography. The evidence indicates that Customs checked Jackson's background on several occasions, and these investigations revealed no criminal history and there is no evidence to indicate that Jackson ever provided information that would cause concern that she had prior criminal problems, nor is there any evidence that Customs ever had any reason to believe that Jackson had a prior criminal record.
For purposes of identity protection, Jackson was to utilize the name "Gracie Greggs" and she utilized such name in connection with all dealings with Customs, including the signing of documents regarding her employment, the agreement which controlled the conditions of her status, and receipts for payments. This name was utilized in all communications with Customs and internally.
The Internet transmissions between the defendant and the informant with which the underlying proceedings were concerned had been printed, saved, and delivered to Customs. The informant was living in a different state at the time trial was approaching, and she was emotionally distraught that she might be required to return and make a personal appearance to testify, even if it was only limited to matters pertaining to the identification of electronic correspondence. The informant had expressed that it was her clear understanding that she would remain completely anonymous with respect to the particular investigation and she did not want her identity and real name exposed. The record suggests that the informant's concerns were driven by her fear that this matter would have a negative impact upon her personal domestic litigation problems.
Although clearly imprudent and misdirected, Cox sympathized with the informant's dilemma, and, in attempting to *1289 accommodate the informant's desire for anonymity and to avoid aggravating the domestic situation in which the informant was involved, Cox made the decision which has brought her to this day that all lawyers must seek to avoid. Based upon misplaced sympathies and a cloudy perception as to the role of the informant in the proceedings, Cox permitted the case to flow and be conducted inappropriately.
The majority notes that the decisions upon which Cox has relied as reasonably supporting the determination of the referee can be distinguished, but the cases upon which the majority relies to reject the referee's recommendation can also be clearly distinguished in numerous significant ways. Here, the referee, having the benefit of personal participation in the proceedings, found that six very substantial mitigating factors should be applied in connection with the consideration of the discipline to be imposed. Further, the substantial evidence from multiple judicial officers based upon Cox's professional behavior cannot be so lightly disregarded. It must be recognized that cases involving the type of behavior for which Cox must respond here have generated discipline covering the entire range of sanctions from public reprimands to disbarments. There can be no doubt that the violation of the duty of candor undermines the system; however, with the previously approved discipline having such a broad range based upon the decisions from this Court, a rejection of the determination by the referee here is, in my view, merely substituting the personal views of those here for those of the referee, a result which the decisions of this Court counsel against. As very clearly noted in Florida Bar v. Niles, 644 So.2d 504, 506-07 (Fla.1994):
[A] referee's recommendation on discipline is afforded a presumption of correctness unless the recommendation is clearly erroneous or not supported by the evidence. See The Florida Bar v. Lipman, 497 So.2d 1165, 1168 (Fla. 1986); The Florida Bar v. Poplack, 599 So.2d 116 (Fla.1992).
In my view, the result here does not afford proper respect to the determination of the referee and the evidence presented.
While one may agree or disagree with the determination in Florida Bar v. Anderson, 538 So.2d 852 (Fla.1989), in that case, a public reprimand was imposed in connection with conduct intended to mislead and deceive an appellate court. Forgery was found to exist in connection with legal proceedings in Florida Bar v. Fatolitis, 546 So.2d 1054 (Fla.1989), which resulted in a public reprimand. Lack of candor during the discovery process produced a public reprimand in Florida Bar v. Wright, 520 So.2d 269 (Fla.1988), and a public reprimand was imposed for false statements made by an attorney who had been subject to prior disciplinary action in Florida Bar v. McLawhorn, 535 So.2d 602 (Fla.1988).
False testimony produced a public reprimand in Florida Bar v. Batman, 511 So.2d 558 (Fla.1987), as was the result in connection with the filing of a false affidavit in Florida Bar v. Hagglund, 372 So.2d 76 (Fla.1979). See also Florida Bar v. Pearce, 356 So.2d 317 (Fla.1978); Florida Bar re Brooks, 336 So.2d 359 (Fla.1976); Florida Bar v. King, 174 So.2d 398 (Fla. 1965).
It is interesting to note that this Court recently approved the issuance of a public reprimand in connection with the actions of a judicial officer who had both initiated a proceeding and then provided false and misleading testimony in that proceeding, which compromised the integrity of the legal system, in In re Frank, 753 So.2d 1228 (Fla.2000). I agree that Florida Bar *1290 v. Feinberg, 760 So.2d 933 (Fla.2000), may certainly have some distinguishing features, but the underlying principle which applies here is that a public reprimand recommended by a local referee was recently considered by this Court to be within the range of appropriate discipline where a governmental attorney engaged in conduct involving a lack of candor in connection with a legal proceeding and had undermined the fundamental attorney-client relationship in the criminal context.
In a similar manner, the range of approved discipline in connection with these types of cases falls far below that directed to be imposed today. The mitigation was far less significant in Florida Bar v. Corbin, 701 So.2d 334 (Fla.1997), but a ninety-day suspension was imposed for deliberately misrepresenting material facts to a court, knowingly submitting false affidavits, and deliberately attempting to mislead the Bar where the individual involved also had prior disciplinary offenses and possessed a dishonest motive. See also Florida Bar v. Story, 529 So.2d 1114 (Fla. 1988); Florida Bar v. Morrison, 496 So.2d 820 (Fla.1986); Florida Bar v. Shapiro, 456 So.2d 452 (Fla.1984).
While I do not condone that which occurred in this case and find it both troubling and aggravating due to the nature of the circumstances, I would not second-guess the referee, merely substitute my view for his, and reject his recommendation, which was reached only after careful consideration of the ethical violation, the purposes of discipline, the wide range of sanctions previously approved in decisions from this Court, the aggravating and mitigating circumstances, and, most importantly, the nature, scope, and extent of the evidentiary proceedings upon which the referee relied in making the recommendation of discipline. I must, therefore, respectfully dissent.
NOTES
[1] Neither the Bar nor Cox challenges the referee's factual findings or recommendations of guilt, which we approve without discussion.
[2] The referee did not rely on any one case in support of the recommended public reprimand and probation, and instead distinguished several cases in which rehabilitative suspensions were imposed. The referee distinguished Florida Bar v. Broida, 574 So.2d 83 (Fla.1991), in which we imposed a one-year suspension, because the attorney was found to have engaged in many violations, including "continuously misrepresenting facts to the court," and "personally attacking the integrity of multiple lawyers and judges" with whom the attorney had contact. The referee also found Florida Bar v. Cibula, 725 So.2d 360 (Fla.1998), inapposite, noting that the attorney "lied to the court about his annual income fully intending to thwart the administration of justice and personally benefit therefrom," and despite the lack of mitigating facts, the attorney was suspended for 91 days. Likewise, the referee distinguished Florida Bar v. Kravitz, 694 So.2d 725 (Fla.1997), in which the attorney "lied to the court and tried to extort money from his client," and was suspended for 30 days.
[3] See Florida Bar v. McLawhorn, 535 So.2d 602 (Fla.1988) (lawyer publicly reprimanded for, among other things, misstating true owner of certain real property in traverse in post-dissolution proceedings where opposing counsel was told of misstatement prior to hearing and the court was informed at hearing).
[4] See Florida Bar v. Fatolitis, 546 So.2d 1054 (Fla.1989) (attorney publicly reprimanded for signing his wife's name as witness to a will where wife was present at will signing but was physically unable to sign due to having burned her hand); Florida Bar v. Anderson, 538 So.2d 852 (Fla.1989) (two attorneys disciplined for making factual misrepresentations in appellate brief, with less culpable attorney receiving public reprimand and lead counsel being suspended for 30 days); Florida Bar v. Hagglund, 372 So.2d 76 (Fla.1979) (public reprimand imposed where attorney filed affidavit that attorney "knew or should have known" was false in lawsuit against former client and owner of business in which attorney had invested).
[5] See Florida Bar v. Sax, 530 So.2d 284 (Fla. 1988) (attorney publicly reprimanded following uncontested referee's report for submitting a notarized pleading containing a statement attorney "knew or should have known" was not true); Florida Bar v. Pearce, 356 So.2d 317 (Fla.1978) (attorney publicly reprimanded following uncontested referee's report for participating in plans for witnesses to testify falsely); Florida Bar v. re Brooks, 336 So.2d 359 (Fla.1976) (attorney publicly reprimanded following conditional guilty plea for testifying falsely in inquest).
[6] See Florida Bar v. King, 174 So.2d 398 (Fla.1965) (public reprimand imposed in lieu of disbarment on attorney who testified falsely and failed to dissuade other witnesses from testifying falsely before grand jury investigating bribery in attorney's senatorial campaign where delay of nine years in the proceeding, subsequent exemplary conduct, and other unique circumstances of the case mitigated against disbarment).
[7] The Oath of Admission to the Florida Bar provides in part that an attorney "will never seek to mislead the judge or jury by any artifice or false statement of fact or law."