# Supreme Court of Florida

_____

No. SC17-585
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**CHARLES PAUL-THOMAS PHOENIX,**
Respondent.

January 28, 2021

PER CURIAM.

We have for review a referee's report recommending that Respondent, Charles Paul-Thomas Phoenix, be found guilty of professional misconduct and suspended from the practice of law for ninety days. We have jurisdiction. *See* art. V, § 15, Fla. Const. We approve the referee's findings of fact and recommendation as to guilt. We also conclude that the referee considered the right aggravating and mitigating factors in applying the standards for imposing sanctions. Yet we disapprove of the referee's recommended sanction and order instead that Respondent be suspended from the practice of law for two years.

## I

This case arises from Phoenix's involvement with Cay Clubs Resorts and Marinas (Cay Clubs), a company that pitched to investors the opportunity to buy and profit from the management of vacation rental units. Phoenix was Cay Clubs's lawyer, in one way or another, from 2005 until 2007. The trouble is, Cay Clubs turned out to be a Ponzi scheme: it made so-called "leaseback" payments to initial investors using money from new investors and failed to disclose this practice on federal mortgage loan documents. As Senior Vice President and General Counsel of Cay Clubs, Phoenix knew about and participated in Cay Clubs's Ponzi scheme. When the scheme collapsed, the U.S. Attorney's Office for the Southern District of Florida (USAO) investigated and prosecuted Cay Clubs's executives and legal representatives. Phoenix cooperated with the USAO in exchange for its agreement that he would not be prosecuted. He never told The Florida Bar (Bar) about that agreement. Years later, the Bar found out and initiated disciplinary proceedings against Phoenix for his role in Cay Clubs's Ponzi scheme. Phoenix has repeatedly denied any wrongdoing. He challenges virtually all elements of the proceedings as improper and specifically alleges that the referee's findings of fact are not supported by competent evidence.

## A

Nobody disputes that Phoenix entered into a non-prosecution agreement

with the USAO on March 10, 2014 (NPA), so that seems to be a good place to begin our analysis. As it turns out, in determining whether Phoenix's conduct merits a longer suspension, we need consider nothing else.

On its face, in its first paragraph, the NPA provides that the USAO will "not criminally prosecute [Phoenix] for any crimes related to [his] participation in the criminal conduct set forth" in an attachment to the NPA. There is no ambiguity about whether the conduct it recounts is criminal in nature. It is. Phoenix may have avoided prosecution for his involvement in that criminal conduct, but by entering into the NPA, Phoenix "admits, accepts, and acknowledges responsibility for the conduct set forth" in the agreement.

Among the things Phoenix admits in the agreement is the fact that Cay Clubs "did not heed his advice at times with regard to the sale and marketing of the investment" and that he "continued to work as a lawyer for the company despite the principals ignoring his advice, because he enjoyed his generous remuneration and other benefits associated with his role at the company." Phoenix "received and commented on marketing materials where fixed rates of return and leaseback payments were promised to potential investors well after he had advised the Cay Clubs principals to halt this practice and had obtained opinions from outside counsel concerning whether the investment was a security."

What is more, Phoenix knew that the "leaseback payments made to investors were concealed from lenders on [real estate] closing documents, including by not listing the payment on the Settlement Statement or HUD-l,[1] when closings were conducted and lender financing was obtained." Phoenix "was also aware that if the leaseback payments were disclosed . . . that some or all of the transactions would not have been approved by the lender without more information." The closings "took place in Phoenix's law office" and "at no point during these closings were the leaseback payments listed" on the HUD-1 closing statements.

Phoenix was also aware that Cay Clubs was "teeter[ing] on the edge of insolvency" yet continued to use "false and misleading" marketing that "promis[ed] a rosy financial picture." Indeed, in Phoenix's own view, "there came a time during the course of the operation of Cay Clubs where it could be fairly described as a 'Ponzi Scheme' due to its inability to pay existing leaseback obligations without new investor money." Investors began to complain that leaseback payments were not being made, yet Phoenix did not disclose Cay Clubs's "inability [to] make leaseback payments . . . to lending institutions or future investors when ongoing marketing and financing activities took place." Further, when Cay Clubs sought outside legal advice, Phoenix was aware that

---

1. A HUD-1 Settlement Statement is a federal mortgage lending form on which creditors or their closing agents disclose all charges imposed on buyers and sellers in consumer credit mortgage transactions.

"significant aspects of the Cay Clubs business and marketing efforts were not disclosed to the outside lawyers." In accordance with the advice from that counsel, Cay Clubs "put into place certain policies or procedures on paper," yet Phoenix knew that the "ongoing marketing activities . . . were contrary to the representations made to outside counsel."

Phoenix "actively participated in the effort to try to incorrectly characterize the nature of the business." "The Cay Clubs principals made great efforts to avoid regulation under the securities laws, and Phoenix assisted in these efforts." Phoenix knew that "Cay Clubs operated in a fraudulent manner, and that investors and others were defrauded through the making of false and misleading promises concerning the safety of the investment." "Phoenix was aware that [Cay Clubs's] practices constituted a fraud on the lending institutions involved and these practices could be fairly described as mortgage fraud."

Finally, Phoenix agreed that he had "not always been forthcoming" with federal regulators "because he did not want to be held accountable for the misconduct at Cay Clubs, or the fraud that took place against the investors and the lending institutions." Phoenix agreed that in the federal investigation he had "minimized his role and knowledge of the events, and ha[d] sought to avoid his own liability."

**B**

Knowing all this, and knowing that he had admitted it, Phoenix nonetheless did not report the NPA or his work with Cay Clubs to the Bar. In March 2017, the Bar filed a complaint with this Court against Phoenix for his role representing Cay Clubs. The complaint alleged that Phoenix's conduct violated two Rules Regulating the Florida Bar (Bar Rules): 4-1.16 ("[A] lawyer . . . shall withdraw from the representation of a client if . . . the representation will result in violation of the Rules of Professional Conduct or law; . . . the client persists in a course of action involving the lawyer's services that the lawyer reasonably believe is criminal or fraudulent . . . or the client has used the lawyer's services to perpetrate a crime or fraud. . . .") and 4-4.1 ("[I]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person; or . . . fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client . . . ."). The complaint also alleged a lack of honesty by Phoenix.

This Court referred the Bar's complaint to a referee for a hearing and recommendation.[2] The original referee did not make findings of fact or

---

2. Later, during the original proceedings before a referee, the Bar additionally argued that Phoenix violated Bar Rule 4-8.4(c) ("[A] lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . .").

recommendations as to guilt. Instead, the referee recommended that Phoenix attend a diversion program. The Bar challenged the original referee's report. This Court disapproved the report and sent the case back to the referee for additional proceedings. We required the referee to issue findings of fact and determined that Phoenix was not eligible for diversion because his alleged misconduct was not "minor."

On remand, the chief judge of the Twelfth Judicial Circuit appointed herself as referee; the original referee had retired and was not eligible to serve as a senior judge. The successor referee reviewed all pleadings, exhibits, transcripts, and briefs filed; afforded each side ninety minutes to present any relevant arguments, testimony, or evidence for her consideration; and conducted a sanctions hearing where Phoenix presented live testimony from sixteen character witnesses, the testimony of two witnesses by telephone, and testified on his own behalf.

In her report and recommendation, the successor referee recommended that Phoenix be found guilty of violating the Bar Rules charged in the complaint and proceedings. She found that, as counsel for Cay Clubs, Phoenix failed to withdraw as counsel despite knowing that he aided his client in committing fraud, concealed the true nature of Cay Clubs's business, and failed to be truthful in statements to others. The successor referee based these findings on the "Non-Prosecution

Agreement and supporting evidence." As a sanction, the referee recommended that Phoenix be suspended for ninety days.

## II

On review, Phoenix challenges the appointment of a successor referee, alleges that the statute of limitations has expired, disputes the legality of the Bar Rule 4-8.4(c) charge, challenges the lack of evidentiary hearing before the successor referee, alleges that the burden of proof was improperly shifted, challenges the successor referee's findings of fact and recommendation as to guilt, and challenges the successor referee's recommended sanction as too harsh. The Bar filed a notice challenging the referee's recommended sanction as too lenient.

## A

Phoenix's first five claims do not amount to much, so we address them briefly.

First, we find the appointment of a successor referee was proper. Phoenix cites no authority to support his claim that the same referee must handle a case on a remand for further proceedings. The Bar Rules contain no such requirement. Nor did Phoenix object to the appointment of a successor referee until his appeal to this Court, and therefore he did not preserve this issue for review as we have held he must. *Fla. Bar v. Picon*, 205 So. 3d 759, 764 (Fla. 2016).

Second, the statute of limitations had not run when the Bar initiated its proceedings in this matter.  The Bar is required to open an investigation "within 6 years from the time the matter giving rise to the investigation is discovered or, with due diligence, should have been discovered."  Bar Rule 3-7.16(a)(1).  Phoenix's misconduct occurred from 2005 to 2007.  The Bar received the NPA in 2014 and initiated this matter in 2017.  It is true that the NPA was not a "determination or judgment of any criminal offense" that would, under the Bar's rules, have clearly required Phoenix to have reported his admitted misconduct.  Bar Rule 3-7.2(e).  And yet this would have been a different case had Phoenix acted more forthrightly, as an officer of the court, and brought the NPA to the Bar's attention.  He did not.  On these facts, we cannot say the Bar failed to exercise due diligence in discovering Phoenix's participation in criminal misconduct, and we find that its complaint was timely filed in 2017 after its 2014 discovery of the NPA.

Third, Bar Rule 4-8.4(c) was properly charged.  Generally, as a matter of due process, the Bar's complaint must allege all rule violations the Bar seeks to prosecute.  *In re Ruffalo*, 390 U.S. 544, 552 (1968) ("[A]bsence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process.").  However, the violation of specific Bar Rules not named in the complaint may be considered if such misconduct is "within the scope of the Bar's accusations" and the attorney was "clearly notified of the

nature and extent of the charges pending against him or her." *Fla. Bar v. Townsend*, 145 So. 3d 775, 781 (Fla. 2014). Bar Rule 4-8.4(c) involves "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Bar's complaint clearly accuses Phoenix of engaging in such conduct both when he represented Cay Clubs and during the federal investigation of Cay Clubs. Further, the Bar argued that Phoenix violated Bar Rule 4-8.4(c) in the original proceedings and in all subsequent appeals. For years Phoenix has been on notice that the Bar's charges include a violation of Bar Rule 4-8.4(c).

Fourth, the successor referee acted permissibly when she decided not to conduct a second evidentiary hearing. "Due process in Bar disciplinary proceedings requires that an accused attorney be given a full opportunity to explain the circumstances of an alleged offense and to offer testimony in mitigation regarding any possible sanction." *Fla. Bar v. Baker*, 810 So. 2d 876, 879 (Fla. 2002). Phoenix had a full opportunity to explain, with ninety minutes of oral argument and presentation of eighteen character witnesses to the successor referee. What is more, Phoenix consented to shorter proceedings before the second referee based on her review of the prior proceedings's transcript. A party cannot invite supposedly improper proceedings and later complain that the proceedings were improper. *See*, *e.g.*, *Lowe v. State*, 259 So. 3d 23, 50 (Fla. 2018) (a party may not invite error and then be heard to complain of that error on appeal).

And fifth, the burden of proof did not improperly shift from the Bar to Phoenix. The Bar must prove by "clear and convincing evidence" that Phoenix violated each Bar Rule charged. *Fla. Bar v. Rayman*, 238 So. 2d 594, 597 (Fla. 1970). Phoenix's own admissions in the NPA are the heart of the Bar's case. We find Phoenix's admissions in that agreement to have been clear and convincing evidence of his violations within the meaning of our cases.

**B**

Competent and substantial evidence supports the successor referee's findings of fact, which in turn support the referee's recommendations as to guilt. This Court's review is limited to determining whether the factual findings are "supported by competent, substantial evidence in the record" and does not include "reweigh[ing] the evidence." *Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)). For recommendations of guilt, this Court's review is equally limited only to determining if the referee's factual findings support the recommendations. *Id.* (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). The referee based her findings of fact almost entirely on the NPA. Though Phoenix's testimony later attempted to downplay these admissions, they are in fact competent and substantial evidence. The referee's factual findings support the successor referee's recommendations of guilt.

- 11 -

Bar Rule 4-1.16 requires attorneys to decline or terminate a representation if the representation results in a violation of the Bar Rules or law, if a client refuses to stop acting in a criminal or fraudulent manner, or a client has used the lawyer's services to perpetrate a crime or fraud. The record demonstrates that Phoenix should have terminated his representation of Cay Clubs for all three reasons. Phoenix was aware that Cay Clubs "did not heed his advice at times with regard to the sale and marketing of the investment" and "continued to work as a lawyer for the company despite the principals ignoring his advice." Phoenix "received and commented on marketing materials where fixed rates of return and leaseback payments were promised to potential investors well after he had advised the Cay Clubs principals to halt this practice and had obtained opinions from outside counsel concerning whether the investment was a security." Beyond the marketing materials, Phoenix knew that the "leaseback payments made to investors were concealed from lenders on [real estate] closing documents . . . when closings were conducted and lender financing was obtained." These closings "took place in Phoenix's law office" and "at no point during these closings were the leaseback payments listed" on the required documents. "The Cay Clubs principals made great efforts to avoid regulation under the securities laws, and Phoenix assisted in these efforts." Phoenix knew that Cay Clubs was committing fraud and that his

services were assisting in that fraud, yet he continued to represent Cay Clubs in violation of Bar Rule 4-1.16.

Bar Rule 4-4.1 requires attorneys to be truthful in statements to others when representing a client. Failing to disclose information is considered untruthful if "disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." Phoenix's actions led directly to misleading investors about Cay Clubs's "inability [to] make leaseback payments . . . to lending institutions or future investors when ongoing marketing and financing activities took place." When Cay Clubs hired outside counsel to determine their potential liabilities under securities law, Phoenix was aware that "significant aspects of the Cay Clubs business and marketing efforts were not disclosed to the outside lawyers." Phoenix failed to disclose information in order to assist Cay Clubs in criminal and fraudulent acts, thereby violating Bar Rule 4-4.1.

Bar Rule 4-8.4(c) prohibits attorneys from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Phoenix violated this rule both through his actions representing Cay Clubs and in the subsequent federal investigation. As Cay Clubs's counsel, Phoenix "actively participated in the effort to try to incorrectly characterize the nature of [Cay Clubs's] business." Closings completed in Phoenix's law office did not disclose the leaseback payments to lenders. During the investigation of Cay Clubs, Phoenix admitted that he had "not

always been forthcoming" with federal regulators "because he did not want to be held accountable for the misconduct at Cay Clubs, or the fraud that took place against the investors and the lending institutions."  Phoenix agreed that in his testimony for the federal investigation he had "minimized his role and knowledge of the events, and ha[d] sought to avoid his own liability."  Phoenix was dishonest about the nature of Cay Clubs's business, helped Cay Clubs commit fraud, was deceitful towards lending institutions about leaseback payments, and misrepresented his unlawful actions to federal investigators.  That violates Bar Rule 4-8.4(c).

## C

In light of all this, we cannot say that a ninety-day suspension has a sufficient basis under our cases.  "The purposes of attorney discipline are: (1) to protect the public from unethical conduct without undue harshness towards the attorney; (2) to punish misconduct while encouraging reformation and rehabilitation; and (3) to deter other lawyers from engaging in similar misconduct." *Fla. Bar. v. Dupee*, 160 So. 3d 838, 853 (Fla. 2015).  The successor referee correctly relied on Florida Standard for Imposing Lawyer Sanctions (Bar Sanction Standard) 7.2 (2015) to determine that suspension is the correct sanction in this case.  ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential

injury to a client, the public, or the legal system."). Because the standards do not provide recommendations of suspension length, we look to factually similar cases to determine the appropriate length. *Dupee*, 160 So. 3d at 853.

The referee did not err in her assessment of aggravating and mitigating circumstances. To impose a sanction commensurate with the misconduct, the referee determines what, if any, mitigating and aggravating factors apply. "[A] referee's findings in mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Alters*, 260 So. 3d at 82 (quoting *Fla. Bar v. Germain*, 957 So. 2d 613, 621 (Fla. 2007)). The successor referee found one aggravating factor, Bar Sanction Standard 9.22(g) (2015) (refusal to acknowledge wrongful nature of conduct), and five mitigating factors, Bar Sanction Standards 9.32(a) (absence of a prior disciplinary record), 9.32(f) (inexperience in the practice of law), 9.32(g) (character or reputation), 9.32(i) (unreasonable delay), and 9.32(j) (2015) (interim rehabilitation). The successor referee rejected the other mitigating factors that Phoenix offered.

The aggravating factor is supported by the record because, despite having signed an NPA admitting participation in criminal conduct, Phoenix still argued that he did not commit misconduct. Further, Phoenix argued that he repeatedly "tried to right the ship" to prevent Cay Clubs's fraud, that "as soon as he knew

- 15 -

[about the Ponzi scheme], he sprung into action" to stop it, and claimed that he was "the one man who told Cay Clubs [to] shut it down." The successor referee characterized Phoenix's narrative as casting "other Cay Clubs executives in the role as villain, and himself in the role of hero. Essentially, he argues that he alone tried to thwart the illegal practices, did so valiantly, and singlehandedly shut down the sales operations when [his] attempts were ultimately thwarted." We cannot square that description of his role with his admissions in the NPA or with his decision not to bring the NPA to the Bar's attention.

The mitigating factors are likewise supported by the record. The Bar does not specifically contest any of the mitigating factors, but highlights that the character witnesses presented by Phoenix generally did not know him at the time of the misconduct, so the mitigating testimony is about Phoenix's current character or reputation, rather than character or reputation at the time of the misconduct.

Notwithstanding this correct assessment of aggravating and mitigating circumstances, we find a suspension of ninety days to be so brief as to be without basis in our law as it has been articulated in similar cases.

Consider the case of Phoenix's former colleague, who might have been his codefendant under slightly different circumstances. *Fla. Bar v. Callahan*, No. SC17-539, 2017 WL 1409677 (Fla. Apr. 20, 2017). Callahan also worked for Cay Clubs for a similar length of time and entered into a non-prosecution agreement.

The Bar alleged that Callahan violated three Bar Rules, the same three as Phoenix, and Callahan agreed to a consent judgment for a one-year suspension. A more severe sanction for Phoenix is warranted because key factual differences exist between the cases, including Callahan's consent judgment. Callahan, through his law firm, only served as outside counsel to Cay Clubs, while Phoenix worked directly for Cay Clubs, holding the positions of "Senior Vice President and General Counsel." Beyond differing formal titles, Phoenix knew more about, and was more deeply involved in Cay Clubs's Ponzi scheme. Unlike Phoenix, Callahan "was not involved in the internal operation of Cay Clubs or aware of the fraud being committed in the marketing, sales or financing by the principals." Conditional Guilty Plea for Consent Judgment at 2, *Callahan*, 2017 WL 1409677 (No. SC17-539). Callahan received a one-year suspension for knowing about the leaseback payments, one element of Cay Clubs's Ponzi scheme, yet "fail[ing] to obtain additional legal opinions and to withdraw from further representation." *Id.* at 4. In contrast, Phoenix admitted that he was aware of and participated in multiple facets of Cay Clubs's Ponzi scheme. Further, Callahan accepted responsibility by entering into a consent judgment for a one-year suspension, while Phoenix has consistently refused to acknowledge before the Bar what he acknowledged in his NPA.

Phoenix's case is also similar to *Fla. Bar. v. Dupee*; the attorney there argued that she did not know that her client was hiding funds during a divorce proceeding. 160 So. 3d at 845. We suspended Dupee for one year, primarily because Dupee knowingly allowed her client to submit incomplete financial information to the court and opposing counsel. *Id.* at 854. While the Bar here did not charge Phoenix with dishonesty towards a tribunal, we find that Phoenix failed on numerous occasions to act as an officer of the court, including when he knowingly allowed numerous fraudulent HUD-1 statements to be prepared in his office—statements without which, he knew, the scheme could not continue.

*Fla. Bar v. Hall*, 49 So. 3d 1254 (Fla. 2010), is another case that tells us the suspension recommended here is too light. Hall falsified real estate documents and, in one important distinguishing episode, forged signatures. Hall admitted to having committed criminally fraudulent conduct in a deferred prosecution agreement; the charges against her were ultimately dismissed because she complied with the agreement. *Id.* at 1256. We nonetheless found that Hall "engaged in ongoing, continuous misrepresentations for several years," and that disbarment was the appropriate sanction despite the referee's recommendation of a ninety-day suspension. *Id.* at 1261, 1263. There, as here, we do "not look favorably on those who use their standing as an officer of the court to deliberately

- 18 -

harm others—especially when they intentionally hurt members of the public for their own personal gain." *Id.* at 1259.

For these reasons, we conclude that Phoenix ought to be suspended from the practice of law for two years. The suspension will be effective thirty days from the filing of this opinion so that Phoenix can close out his practice and protect the interests of existing clients. If Phoenix notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Phoenix shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, Phoenix shall accept no new business from the date this opinion is filed until he is reinstated. Respondent is further directed to comply with all other terms and conditions of the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Charles Paul-Thomas Phoenix in the amount of $8,569.96, for which sum let execution issue.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
GROSSHANS, J., did not participate.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, Tallahassee, Florida, and Kimberly Anne Walbolt, Bar Counsel, The Florida Bar, Tampa, Florida, and Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, Florida,

     for Complainant

Patrick John McGinley of Law Office of Patrick John McGinley, P.A., Winter Park, Florida,

     for Respondent